## LOUIS P. HANSEN v. HAMM REALTY COMPANY AND ANOTHER.[1]

July 7, 1922.

No. 22,957.

**Questions for jury—cause of accident—whether diseased antrum resulted from accident.**

Whether plaintiff's injury resulted from the negligence of defendants and whether the diseased condition of plaintiff's left antrum resulted from such injury were questions for the jury and were properly submitted to them.

Action in the district court for Ramsey county to recover $10,500 for injuries received while at work in painting a chimney on the building of defendant realty company. The case was tried before Michael, J., who at the close of the testimony denied defendants' motion for a directed verdict, and a jury which returned a verdict for $5,000. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*Hoke, Krause & Faegre* and *J. G. Stirn,* for appellants.
*George G. Chapin,* for respondent.

TAYLOR, C.

Action for personal injuries in which plaintiff had a verdict and defendants appeal from an order denying a new trial.

Defendants contend: (1) That the verdict is not justified by the evidence; (2) that the court erred in refusing to instruct the jury that the evidence would not justify a finding that the diseased condition of plaintiff's left antrum resulted from the injury; and (3) that the damages are excessive.

Defendants were constructing a large building in the city of St. Paul and at the time of the accident had several different crews at work upon it. A round smokestack 6 feet in diameter and 200 feet

[1]Reported in 189 N. W. 432.

or more in height had been erected about one foot from the east wall. A crew of bricklayers were constructing the east wall and had scaffolds ten feet in width extending along the wall suspended by cables from the steel work above so that they could be raised as the work progressed. Plaintiff had the contract to paint the smoke-stack. He began at the top and worked down, doing his work from a "sailor's chair" which he raised and lowered by means of a block and tackle. He reached the scaffolds of the bricklayers at noon on the day of the accident. In the afternoon he began work below these scaffolds, and near the middle of the afternoon was struck on the head by a falling brick, sustaining the injuries for which he brought this action.

The scaffolds extended along the wall each side of the smokestack. Planks reaching from one scaffold to the other were so placed that they left a square opening through which the round stack extended. Plaintiff testified that before beginning work below the scaffolds he observed that the openings around the stack had been filled in with boards closing such openings; that while at work about 30 feet be-low the scaffold he looked up and saw that the opening above him had been uncovered; that deeming it unsafe to work beneath such an opening he immediately lowered himself to the false work a few feet below; that he saw some bricks fall through this opening; and that he was struck on the head before he could get out of his "sailor's chair." Two other witnesses corroborate plaintiff's statement that the openings about the stack had been covered with boards. One of these witnesses also testified that he saw some bricks fall through an opening at the stack and on going to the ground floor about 10 minutes later was informed that the painter had been hurt. An-other witness testified that he saw a falling brick strike plaintiff.

Defendant presented evidence to the effect that the openings about the stack had never been closed and that plaintiff had been warned not to work below the scaffold where the bricklayers were at work. Plaintiff denies any such warning.

Defendant also insists that the witness who claimed to have seen the brick strike plaintiff was at a point where he could not have seen plaintiff because the stack was between them. He was standing

on a plank platform 40 or 50 feet from plaintiff waiting for orders. At the trial more than a year and a half afterward, he was called upon to mark on a plan of the building, from memory, the place where he stood. That he could do so only approximately is obvious as he estimated the place to be 18 or 20 feet from the north wall of the building and 25 or 30 feet from the east wall. That the place which he marked would bring a portion of the stack between him and plaintiff is not of itself sufficient to justify us in rejecting his positive and unequivocal statement that he was looking at plaintiff and saw the falling brick strike him. That plaintiff was struck by something is conceded and the evidence clearly made the cause of the accident and defendant's negligence questions for the jury.

It is conceded that plaintiff's left antrum is diseased and that the verdict is not excessive if the diseased condition of this antrum resulted from the injury sustained. But defendants insist that a blow on the head could not cause this condition, and presented the testimony of specialists of high standing to that effect. Opposed to this is the fact that plaintiff was apparently in perfect health prior to the accident; that ever since the symptoms to be expected in case of a diseased antrum, such as headaches, dizzy spells and impaired vision, have been present; and also the testimony of the specialist, also of high standing, who discovered the diseased condition of the antrum and treated plaintiff therefor, to the effect that it probably resulted from the blow, as he found no other cause to which he could attribute it. We think the evidence made a question for the jury and find nothing which will justify us in disturbing their verdict after it has been approved by the trial court.

Order affirmed.